UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| JEANETTE BROWN, et al.,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>SONOMA COUNTY LAND COMPANY, et al.,<br><br>　　　　Defendants. | Case Nos. 17-cv-00913-RMI; 18-cv-02699-RMI<br><br>**ORDER ON MOTION FOR ATTORNEYS' FEES, COSTS, AND LITIGATION EXPENSES**<br><br>Re: Dkt. No. 118 |

## INTRODUCTION

Before the court is Plaintiffs' Motion for Attorneys' Fees against Defendants Sonoma County Land Company, LLC and E. Richard Thomas (dkt. 118). Plaintiffs request that the court award attorney Thomas E. Frankovich $679,965 in attorneys' fees ($226,655 combined with a requested three (3) time multiplier), as well as $18,510.90 in costs and litigation expenses, for a total of $698,475.90. Having considered the arguments of the Parties and the papers submitted,[1] Plaintiffs' Motion is **GRANTED IN PART** and **DENIED IN PART**. The court awards Plaintiffs a total of **$141,234.90** in attorneys' fees, costs, and litigation expenses.

## BACKGROUND

The facts of these cases have been set forth in detail several times over the course of their six-year pendency. To briefly summarize, these cases arose from Plaintiffs' allegations that the facilities at Evergreen Village, a shopping center owned and operated by Defendants, presented

---

[1] A hearing on the present Motion was held on April 4, 2023, at which only counsel for the Defendants was present. *See* (dkt. 126).

various architectural barriers which violated the ADA and several California statutes. *See Compl.* (dkt. 1).[2] Plaintiffs also brought claims for retaliation and to quiet title. Following the deaths of several Plaintiffs, their survivors were substituted into the case as Plaintiff Representatives. *See* (dkt. 77). The Parties then reached a settlement agreement as to the injunctive aspects of the cases, after which this court declined to exercise supplemental jurisdiction over the remaining state law claims. *See* (dkts. 108, 115). The Parties were unable to resolve their differences as to the amount of attorneys' fees owed to Plaintiff and the present Motion was filed. *See* (dkt. 118).

## LEGAL STANDARD

The ADA permits a "prevailing party" to recover attorneys' fees, litigation expenses, and costs. 42 U.S.C. § 12205; *see also Barrios v. Cal. Interscholastic Fed'n*, 277 F.3d 1128, 1134 (9th Cir. 2002) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983)) ("[A] prevailing plaintiff under a statute so worded 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.'"). In cases where fees are authorized under federal law, district courts apply a two-step process to calculate the appropriate award. *See Fischer v. SJB-P.D., Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000). First, the court calculates the "lodestar" by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *See Grove v. Wells Fargo Fin. Cal., Inc.*, 606 F.3d 577, 582 (9th Cir. 2010). Second, the court may adjust the lodestar figure based upon the factors listed in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69-70 (9th Cir. 1975) that have not already been accounted for in the initial lodestar calculation. *Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 622 (9th Cir. 1993). These include:

> (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

---

[2] Although the two cases have been related, for purposes of clarity the docket citations in this Order will correspond to 17-cv-00913 (as opposed to 18-cv-02600).

2

526 F.2d at 70. A "strong presumption" exists that the lodestar figure represents a "reasonable fee," and it should only be enhanced or reduced in "rare and exceptional cases." *Pa. v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986).

## DISCUSSION

### A. Prevailing Party

A plaintiff is a prevailing party "when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Fischer*, 214 F.3d at 1118 (quoting *Farrar v. Hobby*, 506 U.S. 103, 111-12 (1992)). "[A] material alteration of the legal relationship occurs [when] the plaintiff becomes entitled to enforce a judgment, consent decree, or settlement against the defendant." *Farrar*, 506 U.S. at 113. "In these situations, the legal relationship is altered because the plaintiff can force the defendant to do something he otherwise would not have to do." *Fischer*, 214 F.3d at 1118; *see also Jankey v. Poop Deck*, 537 F.3d 1122, 1130 (9th Cir. 2009).

In full settlement of Plaintiffs' claims for injunctive relief, Defendants entered into "written stipulations and resolutions" which required certain modifications to the subject property. *See* Case Management Conference Statement (dkt. 110) at 3. These settlement agreements materially altered the legal relationship between the parties because Defendants were required to do something, benefitting Plaintiffs, that they would not otherwise have had to do.[3] *See Fischer*, 214 F.3d at 1118 (quoting *Farrar*, 506 U.S. at 111-12). Plaintiff is, therefore, a prevailing party.

Defendant contends that Plaintiffs did not prevail, citing to *Buckhannon Bd. and CareHome, Inc. v. W. Va. Dept. of Health and Human Res.*, 532 U.S. 598 (2001). *See* Defs.' Opp'n (dkt. 119) at 7. That case, however, addressed the so-called "catalyst theory" of awarding attorneys' fees—which is not at issue in the present case. *Buckhannon*, 532 U.S. at 601. In fact, the Court in *Buckhannon* specified that "settlement agreements enforced through a consent decree" are sufficient to constitute "the material alteration of the legal relationship of the parties"

---

[3] Defendants contend that the modifications would have been made regardless and thus Plaintiffs' suit was unnecessary. *See* Defs.' Opposition (dkt. 119) at 7. However, the settlement agreement provided a legally-enforceable reason for completing this work and thus Plaintiffs are a prevailing part. *See Richard S. v. Dept. of Developmental Servs. of Ca.*, 317 F.3d 1080, 1086 (9th Cir. 2003).

3

necessary to permit an award of attorneys' fees. *Id*. at 604; *see also Chapman v. NJ Properties Inc.*, No. 5:16-CV-02893-EJD, 2019 WL 3718585, at *3 (N.D. Cal. Aug. 7, 2019). As to ADA matters, the Ninth Circuit has specifically held that a legally enforceable settlement agreeable does not preclude granting prevailing party status under *Buckhannon*. *Richard S. v. Dept. of Developmental Servs. of Ca.*, 317 F.3d 1080, 1086 (9th Cir. 2003); *see also Chapman*, 2019 WL 3718585, at *3 ("In light of the Ninth Circuit's decision in *Richard*, this court concludes that *Buckhannon* does not preclude this court from granting prevailing party status to Plaintiff. [Defendants] and Plaintiff entered into a legally enforceable settlement agreement and the court retained jurisdiction of the attorney's fee issue."). As such, Brown is entitled to an award of attorneys' fees as a prevailing party.

**B. Calculation of Award**

To calculate the "lodestar figure," the court must take the number of hours reasonably expended on the litigation and multiply it by a reasonable hourly rate. *See Grove*, 606 F.3d at 582.

**1. Reasonableness of Hourly Rate**

The fee applicant bears the burden of producing satisfactory evidence "that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). "Affidavits of the plaintiff[s][']  attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiff[s][']  attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).

Plaintiffs request an hourly rate of $650 for attorney Thomas E. Frankovich. Pls.' Mot. (dkt. 118) at 7, 18, 29. Frankovich has over forty-five (45) years of experience, including twenty-five (25) years of experience in disability access litigation. Decl. of Frankovich in Supp. of Pls.' Mot. for Attys.' Fees, Costs, and Litig. Expenses ("Frankovich Decl.") (dkt. 125) at 7, 8. It is undeniable that Frankovich has a great deal of experience in litigating disability access cases, and he has also become a recognized author, lecturer, and legal commentator on the topic of disability rights. *Id.* at 11, 12. Defendants do not dispute the reasonableness of Frankovich's hourly rate in

4

their Opposition. *See* (dkt. 119).

Frankovich's request for an hourly rate of $650, however, is unreasonable. This rate far exceeds those typically awarded by courts in the Northern District. *See Johnson v. Huong-Que Rest.*, No. 21-CV-04133-BLF, 2022 WL 658973, at *5 (N.D. Cal. Mar. 4, 2022) ("[F]or attorneys with approximately 20 or more years of experience, courts in this district have generally approved hourly rates ranging from $350 to $495 in disability cases"); *see also Johnson v. Santa Clara Plaza 478, LLC*, No. 3:20-CV-06098-JD, 2022 WL 4624768, at *4 (N.D. Cal. Sept. 30, 2022) (awarding an hourly rate of $475 for an attorney with twenty-five (25) years of experience). Frankovich has, nonetheless, occasionally been awarded hourly rates that exceed those typically awarded in this District. In recognition of these higher awards, which presumably were intended to reflect the attorney's experience and skill, the court finds it reasonable to award Frankovich an hourly rate of $600. *See, e.g.*, *Chapman*, No. 2019 WL 3718585 (awarding Frankovich $600 per hour).

**2. Reasonableness of Hours Expended**

The burden rests with the opposing party to rebut the fee request and to demonstrate that the hours billed were "excessive, redundant, or otherwise unnecessary . . . ." *Blackwell v. Foley*, 724 F. Supp. 2d 1068, 1079 (N.D. Cal. July 15, 2010) (citing *Hensley*, 461 U.S. at 434). Even if the opposing party has not objected to the time billed, however, a court "may not uncritically accept a fee request" and is obligated to review the time billed and assess whether it is reasonable. *Common Cause v. Jones*, 235 F. Supp. 2d 1076, 1079 (C.D. Cal. 2002) (citing *Sealy, Inc. v. Easy Living, Inc.*, 743 F.2d 1378, 1385 (9th Cir. 1984)). A court must exclude from the calculation any hours that were not "reasonably expended," such as hours that are excessive, redundant, or otherwise unnecessary. *Hensley*, 461 U.S. at 433-34; *see also Rodriguez v. Barrita, Inc.*, 53 F. Supp. 3d 1268, 1280-81 (N.D. Cal. 2014).

Defendants contend that any award must consider "duplicated efforts" by Frankovich, as well as any litigation delays that resulted from Frankovich's health and/or allegedly abusive tactics. Defs.' Opp'n (dkt. 119) at 8-11. These arguments appear to dispute the reasonableness of the hours billed by Frankovich, although they lack any specificity with respect to the number of

1  hours that should be reduced or what a reasonable award would be. Based upon the court's
2  independent review of Frankovich's records, the court agrees that the hours billed by Frankovich
3  are not entirely reasonable—for the reasons discussed below.

### i. Billing for Complaint(s) and Motion for Attorneys' Fees

As has been routinely recognized by courts in this District, Frankovich's billing practices are often excessive. *See, e.g.*, *Brown v. HTR Properties LLC*, No. 3:17-CV-00829-WHO, 2019 WL 13251605, at *3-6 (N.D. Cal. Sept. 30, 2019); *Yates v. Vishal Corp.*, No. 11-CV-00643-JCS, 2014 WL 572528, at *3-5 (N.D. Cal. Feb. 4, 2014); *Chapman*, 2019 WL 3718585, at *8-10. The most commonly-cited issues are the number of hours billed for complaints, motions, and similar filings, most of which are form pleadings that are almost entirely duplicative (save for the facts and party names) of pleadings in Frankovich's other cases. *See, e.g.*, *HTR Properties LLC*, 2019 WL 13251605, at *5; *Yates*, 2014 WL 572528, at *4-5; *Chapman*, 2019 WL 3718585, at *9-10.[4]

The court finds that these same issues are present in the current case. For example, Frankovich billed 19.7 hours for the drafting and filing of the complaint, as well as 5.8 hours for the amended complaint, 5.0 hours for the first amended complaint, and a total of 8.4 hours for the the second amended complaint (billed as two entries of 4.2 hours, apparently to account for the two pending actions). Pl.'s Mot. (dkt 118-6) at 2, 5, 7. While slight modifications have been made with respect to the facts and party names, the complaint and subsequent amendments are largely identical to those filed in many of Frankovich's other ADA cases—including those brought on behalf of Brown. *See, e.g.*, *Brown v. Printing Plus, et al.*, 16-cv-07250; *Brown v. Ukiah Ford Inc., et al.*, 17-cv-00829; *Brown v. Willits Wine & Spirits, et al.*, 17-cv-01035; *Brown v. Aguilar, et al.*, 17-cv-01781. These minor modifications could not reasonably have taken such a significant amount of time. *See, e.g.*, *HTR Properties LLC*, 2019 WL 13251605, at *5 (awarding Frankovich 1.0 hour for the drafting of the complaint and 0.1 hours for the drafting of the first amended

---

[4] This issue is not unique to Frankovich, as it is typically observed in other ADA cases brought by attorneys with tactics similar to Frankovich's. *See, e.g.*, *Rodriguez*, 53 F. Supp. 3d at 1284-85; *Doran v. Corte Madera Inn Best W.*, 360 F. Supp. 2d 1057, 1062 (N.D. Cal. 2005); *Johnson v. Progreso Dev., LLC*, No. 5:20-CV-02167-EJD, 2020 WL 6136093, at *6 (N.D. Cal. Oct. 19, 2020).

complaint); *Doran v. Corte Madera Inn Best W.*, 360 F. Supp. 2d 1057, 1062 (N.D. Cal. 2005) (awarding Frankovich 0.5 hours for the drafting of the complaint). Considering the *somewhat* more complicated nature of this case, the court will award 4.0 hours for the complaint, 2.0 hours for the amended complaint, 2.0 hours for the first amended complaint, and 2.0 hours total for the second amended complaint.

In much the same vein, the 23.0 hours billed for the present Motion are also unreasonable. Like the various complaints, the present Motion is nearly identical to those used by Frankovich in similar cases. *See, e.g.*, *Chapman*, 2019 WL 3718585. Accounting for the nature of the present case, as well as the inclusion of several exhibits and declarations accompanying the Motion, the court awards 4.0 hours for the preparation of the Motion. *Cf. Yates*, 2014 WL 572528, at *4-5 (awarding Frankovich 3.0 hours for the preparation of a functionally identical motion).

### ii. Other Unreasonable Billing Practices

Frankovich's billing practices also suffer from various other deficiencies, many of which have already been observed by courts in the Northern District. To start, Frankovich bills far too much for the review of simple docket entries and other administrative tasks. To provide just a few examples, Frankovich billed 0.1 hours (6 minutes) for review of the following: a routine confirmation that Defendants had been served (dkts. 6, 7); a three-sentence court order vacating a hearing (dkt. 11); a court order reassigning the case to the undersigned, but not otherwise changing any deadlines (dkt. 26); a one-sentence text order referring the case to Judge Ryu for settlement; Plaintiffs' consent to the jurisdiction of a magistrate judge (filed *by Frankovich* the previous day) (dkt. 43); Defendant Read Investment, LLC's consent to the jurisdiction of a magistrate judge (comprised of nothing more than a box with a check mark) (dkt. 45); a one-sentence text order setting a mediation session; a two-sentence text order continuing a scheduled settlement conference (dkt. 103). *See* Pls.' Mot. (dkt. 118-6); *see also HTR Properties LLC*, 2019 WL 13251605, at *5 (criticizing Frankovich's billing for many of these same activities, noting that "[t]hese tasks simply do not take 6 minutes each"). As an experienced attorney and litigator, Frankovich could not (nor should not) reasonably have spent 6 minutes reviewing such entries. *Johnson v. Progreso Dev., LLC*, No. 5:20-CV-02167-EJD, 2020 WL 6136093, at *5 (N.D. Cal.

Oct. 19, 2020) ("While the Court agrees that billing for time spent reviewing court orders is generally reasonable, the Court expects counsel in this case to be particularly familiar with the Court's routine docket entries and communications."). While the court declines to list every instance of overbilling in this respect, after reviewing Frankovich's records the court finds it reasonable to deduct six (6) hours from the total to account for these excesses.

Next, many of the tasks for which Frankovich billed must also be mitigated because of the preexisting relationship between Frankovich and Plaintiff Brown. *See HTR Properties LLC*, 2019 WL 13251605, at 6 ("Some entries suggest an unreasonable number of hours because of Frankovich's preexisting relationship with Brown."). Given that Frankovich was, at the time, representing Brown in at least eleven (11) different ADA lawsuits against both public and private entities in Willits, CA, it is reasonable to assume that Frankovich did not need to review and/or discuss this case with his client to the degree that would normally be necessary. Thus, the court will reduce any apparent redundancies, such as the 0.6 hours spent drafting a questionnaire, retainer, and letter to Brown, as well as the 0.5 hours apparently spent going over the questionnaire with Brown. *See* Pl.'s Mot. (dkt 118-6). To that end, the court will deduct four (4) hours from the total.

### 3. Lodestar Figure

Accounting for the above-mentioned reductions for excessive and/or redundant entries, the lodestar figure is calculated based on the following hours:

| Attorney | Hours Billed | Hours Reduced | Hours Awarded | Rate | Lodestar Figure |
|---|---|---|---|---|---|
| Thomas E. Frankovich | 348.7 | 57.5 | 292.2 | $600 | $175,320 |

### C. Adjustment of Award

Having calculated the lodestar figure, the court may now turn to a consideration of the *Kerr* factors to determine whether an adjustment of the lodestar is necessary. 526 F.2d at 70. Several of the factors have already been considered in calculating the lodestar. Specifically, the Court has already considered the requisite skills for this type of legal service, the customary fee charged for this type of service, the experience, reputation, and skill of Mr. Frankovich, awards in

similar cases, the nature and length of the professional relationship with the client, and the lack of preclusion of other employment by the attorney due to acceptance of the case. *Id.*

Frankovich argues that a three (3) time multiplier of the lodestar is necessary in the present case. Pls. Mot. (dkt. 118) at 7, 15-16, 29. A consideration of the remaining *Kerr* factors, however, makes apparent that a reduction of the lodestar is actually more appropriate. While perhaps *slightly* more complicated than the average disability access case, given the questions of ownership and alleged retaliation, there are no particularly novel questions to distinguish the present case from the hundreds of others brought by Frankovich. *See Doran*, 360 F. Supp. 2d at 1063 ("Mr. Frankovich has succeeded in reducing disability access cases to a kind of routine, in which his clients attempt to patronize various business establishments, report deficiencies to Mr. Frankovich, and a lawsuit is then filed . . . Thus, this case can be said to involve no novel question."). Moreover, such a relatively "simple and lucrative case would not be viewed as 'undesirable' by other attorneys." *Id.* Further, although Frankovich takes these cases on a contingent basis, because he "has effectively reduced such cases 'to a kind of routine,' the [c]ourt does not find that he took on the level of risk that would weigh in favor of enhancement." *Yates*, 2014 WL 572528, at *6 (quoting *Doran*, 360 F. Supp. 2d at 1063). As to the time and labor required, both sides accuse the other of behaving unreasonably and thereby extending the length of these proceedings. While declining to make any specific findings, it is apparent to the court that both sides have potentially contributed to these delays to some extent. At least part of these delays, however, appear attributable to Frankovich's serious health conditions, something which the Defendants should not be held liable for. *See, e.g.*, Decl. of Thomas E. Frankovich (dkt. 73). The final factor, the amount involved and the results obtained, is somewhat less clear. Defendants contend that the modifications would have been made regardless and thus Plaintiff's suit was entirely unnecessary. *See* Defs.' Opposition (dkt. 119) at 7 ("SCL on its own initiative had determine[d] to identify ADA upgrades . . . had retained a CASp expert, and had entered into contracts to perform the identified works of improvement . . . ."). As noted above, however, entering into a settlement agreement following the filing of this action provided a legally-enforceable reason for completing this work.

In light of these considerations, the court finds that a reduction of thirty percent (30%) is appropriate to reach a reasonable fee in the present case. *See Doran*, 360 F. Supp. 2d at 1064 (50% lodestar reduction in a Frankovich case). As such, the adjusted lodestar figure is **$122,724**. This adjustment reflects the fact that while the significant amount of time spent on this litigation may—to some extent—be out of proportion to the results obtained (considering this court's dismissal of the state law claims), Frankovich nonetheless achieved some degree of success for Plaintiffs and the public. *See Rodriquez*, 53 F. Supp. 3d at 1290.[5]

**D. Settlement Offset**

Defendants Sonoma County Land Company, LCC and E. Richard Thomas argue that they are "entitled to a credit" for any payment made to Plaintiffs as part of a separate, monetary settlement agreement between Plaintiffs and Defendant Read Investments, LLC. Defs.' Opp'n (dkt. 119) at 9. Any such offset, however, would only relate to *attorneys' fees* included as part of that settlement, so as to prevent a "double recovery." *Bravo v. City of Santa Maria*, 810 F.3d 659, 668 (9th Cir. 2016); *see also Chapman*, 2019 WL 3718585, at *9; *Rodgers v. Claim Jumper Rest., LLC*, No. 13-CV-5496 YGR, 2015 WL 1886708, at *14 (N.D. Cal. Apr. 24, 2015). The settlement between Brown and Read Investments, however, appears to include an express waiver of any claims to attorney's fees. *See* (dkt. 81) at 2. As such, Defendants Sonoma County Land Company, LCC and E. Richard Thomas are not entitled to an offset in this regard.

**E. Costs and Litigation Expenses**

As noted, the ADA also permits a "prevailing party" to recover litigation expenses and costs. 42 U.S.C. § 12205. Frankovich claims $18,510.90 in costs and litigation expenses, stemming from (among other things) fees related to filing, service of process, photocopying and scanning, experts, inspections, and reports. Pls.' Mot. (dkt. 118) at 7, 28, 29. Defendants do not

---

[5] A district court has broad discretion to impose a ten percent (10%) fee "haircut" without any specific explanation, even in cases where an attorney achieves "excellent" results. *Moreno v. City of Sacramento,* 534 F.3d 1106, 1112, 1114 (9th Cir. 2008). As such, it seems reasonable to reduce Frankovich's overall fees by thirty percent (30%), in addition to the individual reductions identified above, because of the "constraints on [P]laintiffs' overall success." *Rodriquez*, 53 F. Supp. 3d at 1290.

appear to contest any of these costs. The court has reviewed the costs and they appear to be reasonable, especially considering the length of the proceedings and Frankovich's offset for the expert costs attributable to the other Defendants. The requested costs and litigation expenses will be awarded in full: **$18,510.90**.

## CONCLUSION

For the reasons stated above, Plaintiffs' Motion (dkt. 118) is **GRANTED IN PART** and **DENIED IN PART**. The court awards Plaintiffs' counsel Thomas E. Frankovich $122,724 in fees and $18,510.90 in costs and litigation expenses—for a total of **$141,234.90**—against Defendants Sonoma County Land Company, LCC and E. Richard Thomas.

**IT IS SO ORDERED.**

Dated: April 14, 2023

ROBERT M. ILLMAN
United States Magistrate Judge